IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| MELVIN PANNELL, | § |
| | § |
| Plaintiff, | § |
| | §  Civil Action No. 3:11-CV-2385-D |
| VS. | § |
| | § |
| MICHAEL J. ASTRUE, | § |
| COMMISSIONER OF SOCIAL | § |
| SECURITY ADMINISTRATION, | § |
| | § |
| Defendant. | § |

MEMORANDUM OPINION

Plaintiff Melvin Pannell ("Pannell") brings this action under § 205(g) of the Social Security Act, 42 U.S.C. § 405(g) (the "Act"), for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his claim for supplemental security income under Title XVI of the Act. For the reasons that follow, the Commissioner's decision is affirmed.

I

On April 16, 2004 Pannell applied for supplemental security income payments alleging that he had been disabled since April 1, 2003. His application was denied initially and on reconsideration. At Pannell's request, a hearing was scheduled before an administrative law judge ("ALJ"), but when Pannell failed to appear for the hearing, his case was dismissed. After the Appeals Council remanded the case, a hearing was held in 2010.

The ALJ followed the five-step sequential process prescribed in 20 C.F.R. § 416.920(a) (2012) and concluded that (1) Pannell had not engaged in substantial gainful

activity since April 16, 2004, the application date; (2) he had severe impairments of diabetes mellitus, essential hypertension, hepatitis C, and obesity; (3) he did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) he had the residual functional capacity ("RFC") to lift, carry, push, and pull twenty pounds occasionally and ten pounds frequently as well as stand and/or walk six hours and sit six hours each out of an eight-hour workday and that Pannell remains capable of performing light work as defined in 20 C.F.R. § 416.967(b); (5) he has no past relevant work; and (6) considering his age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Pannell can perform. Accordingly, the ALJ determined that Pannell was not "disabled" within the meaning of the statute. Pannell's request for review of the ALJ's decision was denied by the Appeals Council, and the ALJ's decision became the final decision of the Commissioner.

Pannell now seeks judicial review, arguing that the ALJ erred in failing to find Pannell's impairments meet or equal listing 1.04A in 20 C.F.R. Part 404, Subpart P, Appendix 1("Listing 1.04A"), that the ALJ applied the incorrect legal standard and failed to recognize all of Pannell's severe impairments, and that the ALJ's RFC finding is not supported by substantial evidence.

II

The court's review of the Commissioner's decision is limited to determining whether substantial evidence supports the decision and whether the Commissioner applied the proper legal standards to evaluate the evidence. *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995) (per curiam). "The Commissioner's decision is granted great deference and will not be disturbed unless the reviewing court cannot find substantial evidence in the record to support the Commissioner's decision or finds that the Commissioner made an error of law." *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995) (footnotes omitted). "The court may not reweigh the evidence or try the issues de novo or substitute its judgment for that of the [Commissioner]." *Kane v. Heckler*, 731 F.2d 1216, 1219 (5th Cir. 1984) (citations omitted). "If the Commissioner's findings are supported by substantial evidence, then the findings are conclusive and the Commissioner's decision must be affirmed." *Martinez*, 64 F.3d at 173. "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "It is more than a mere scintilla, and less than a preponderance." *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993) (citing *Moore v. Sullivan*, 919 F.2d 901, 904 (5th Cir. 1990) (per curiam)). "To make a finding of 'no substantial evidence,' [the court] must conclude that there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Dellolio v. Heckler*, 705 F.2d 123, 125 (5th Cir. 1983) (citation omitted). Even if the court should determine that the evidence preponderates in the

claimant's favor, the court must still affirm the Commissioner's findings if there is substantial evidence to support these findings. *See Carry v. Heckler*, 750 F.2d 479, 482 (5th Cir. 1985). The resolution of conflicting evidence is for the Commissioner rather than for the court. *See Patton v. Schweiker*, 697 F.2d 590, 592 (5th Cir. 1983) (per curiam).

For purposes of social security determinations, "disability" means an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (2011). In determining whether an applicant is disabled, the ALJ follows a five-step sequential analysis. *See, e.g.*, *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). If the ALJ finds that the claimant is disabled or is not disabled at any step in the analysis, the analysis is terminated. *Id.* Under the five-step sequential inquiry the Commissioner considers whether (1) the claimant is presently engaged in substantial gainful activity, (2) the claimant's impairment is severe, (3) the claimant's impairment meets or equals an impairment listed in 20 C.F.R. § 404.1520, Subpart P, Appendix 1, (4) the impairment prevents the claimant from doing past relevant work, and (5) the claimant cannot presently perform relevant work that exists in significant numbers in the national economy. *See, e.g.*, *Leggett*, 67 F.3d at 563-64 n.2; *Martinez*, 64 F.3d at 173-74; 20 C.F.R. § 404.1520(a)(4) (2012). "The burden of proof is on the claimant for the first four steps, but shifts to the [Commissioner] at step five." *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994) (per curiam) (citing *Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989) (per curiam)).

When determining the propriety of a decision of "not disabled," this court's function is to ascertain whether the record considered as a whole contains substantial evidence that supports the final decision of the Commissioner, as trier of fact. The court weighs four elements of proof to decide if there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) age, education, and work history. *Martinez*, 64 F.3d at 174 (citing *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991) (per curiam)). "The ALJ has a duty to develop the facts fully and fairly relating to an applicant's claim for disability benefits." *Ripley*, 67 F.3d at 557. "If the ALJ does not satisfy [this] duty, [the] decision is not substantially justified." *Id.* Reversal of the ALJ's decision is appropriate, however, "only if the applicant shows that he was prejudiced." *Id.* The court will not overturn a procedurally imperfect administrative ruling unless the substantive rights of a party have been prejudiced. *See Smith v. Chater*, 962 F. Supp. 980, 984 (N.D. Tex. 1997) (Fitzwater, J.).

III

Pannell maintains that the ALJ erred in failing to find at step three that his impairments meet or equal Listing 1.04A.

A

Listing 1.04A describes "[d]isorders of the spine," in relevant part, as follows:

> Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With . . . [e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

Listing 1.04A. In his decision, the ALJ specifically addressed whether Pannell's impairments met the requirements of listings 9.08, 4.03, and 5.05. The ALJ did not address, however, whether Pannell's impairments met the requirements of Listing 1.04A.

In *Audler v. Astrue*, 501 F.3d 446 (5th Cir. 2007), the Fifth Circuit held that an ALJ's "bare conclusion" that the claimant's impairments were severe, but not severe enough to meet or medically equal one of the listed impairments, was an error because "[t]he ALJ did not identify the listed impairment for which [the claimant's] symptoms fail[ed] to qualify, nor did she provide any explanation as to how she reached the conclusion that [the claimant's] symptoms [were] insufficiently severe to meet any listed impairment." *Id.* at 448. In the present case, the ALJ cited medical evidence suggesting that Pannell had experienced various symptoms of a spinal disorder, but did not specifically mention or discuss Listing 1.04A, which addresses disorders of the spine. Pannell argues, and the Commissioner concedes, that this was error.[1] But the court's inquiry does not end here. Instead, the court

---

[1]The Commissioner states:

> As Plaintiff points out, the ALJ does not specifically address

"must still determine whether this error was harmless." *Audler*, 501 F.3d at 448.

B

1

In considering whether a step three error was harmless in *Audler*, the Fifth Circuit reviewed the evidence to determine whether the claimant had demonstrated that she satisfied all the criteria of the Listing at issue. *Id*. at 448-49. The record included findings from the claimant's treating physician that satisfied the Listing, and "[n]o medical evidence was introduced to contradict these findings." *Id*. at 449. The panel concluded that, absent some explanation from the ALJ, the claimant "met her burden of demonstrating that she meets the Listing," and "her substantial rights were affected by the ALJ's failure to set out the bases for her decision at step three." *Id*.

Under *Audler*, Pannell must establish that his impairment "meet[s] *all* of the specified medical criteria" of Listing 1.04A. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis in original); *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991) ("[T]o secure a finding of disability without consideration of age, education, and work experience, a claimant must establish that his impairment meets or equals an impairment enumerated in the listing of

---

> Appendix 1 Listing 1.04A in making his finding that Plaintiff does not have an impairment or combination of impairments that meets or equals the criteria of an Appendix 1 listed impairment. The Commissioner concedes that such failure by the ALJ constitutes error.

D. Br. 4-5 (citations omitted).

impairments in the appendix to the regulations."). The criteria in the listings are "demanding and stringent." *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994).

2

Pannell argues that, when the medical evidence is properly considered, it shows that his muscular impairments meet or equal the requirements of Listing 1.04A. In 2003 Hassan Farooq, M.D. ("Dr. Farooq") diagnosed Pannell with "very early degenerative disc disease" at the L3-L5 levels, noting slight wedging at the L4 level and "some degree of lumbar muscular spasm." R. 334. In 2004 consulting physician Paul Kornu, M.D. ("Dr. Kornu") noted that Pannell suffered from osteoarthritis. During his examination, Dr. Kornu observed loss of sensation in the lower extremities rated as a "1/5" on the right side and a "3/5" on the left side. Pannell had positive straight leg raise testing at 15 degrees on the right, and 60 degrees on the left. In addition, X-rays of Pannell's lumbar spine revealed early degenerative disc disease and the possibility of "a mild degree of lower lumbar spinal stenosis."[2] *Id.* at 340A. Pannell argues that this evidence of spinal stenosis, in combination with findings of sensory loss, indicates compression of his cauda equine, which is synonymous with compression of a nerve root, as is required by Listing 1.04A.

A 2008 examination by Henry L. Underwood, III, D.O. ("Dr. Underwood") revealed

---

[2]Spinal stenosis is defined as a "narrowing of the vertebral canal, nerve root canals, or intervertebral foramina of the lumbar spine caused by encroachment of bone upon the space; symptoms are caused by compression of the cauda equina and include pain, paresthesias, and neurogenic claudication." *Dorland's Illustrated Medical Dictionary* 1769-70 (32nd ed. 2012).

decreased pinpricking over the L5-S1 dermatome bilaterally, and numbness over the lateral foot, fourth and fifth toe region, on the left and on the lateral thigh on assessment. The examination further revealed a positive Kemp's sign and Lasègue sign.[3] Dr. Underwood's examination also revealed decreased range of motion in Pannell's lumbar spine in all areas. On function testing, Dr. Underwood noted that Pannell

> cannot hop and squat. He cannot stand up on his toes or heels. He cannot perform the heel-to-toe maneuver. I asked him to bend down and he has problems bending. He has to hold onto the examination table. He can only go half way and has to get back up. Without bending his knees, he can only bend at about a 30° angle and that is it.

*Id.* at 366. Dr. Underwood diagnosed Pannell with lumbar radiculopathy and opined that he is disabled from doing any type of full time or part-time work. In 2009 an X-ray of Pannell's lumbar spine revealed chronic degenerative changes with moderate L4-L5 and severe L5-S1 intervertebral disc space narrowing.

Pannell argues that his cervical spine disorders also meet or equal the requirements of Listing 1.04A. A cervical MRI scan in 2005 revealed disc degenerative changes at the C3-C4 level with evidence of herniation of the nucleus pulposus at the same level, which extends to the right side and indents the cord at that level. Pannell argues that although the herniation did not intrude on the exiting foramen, the herniated nucleus pulposus still meets both Listing

---

[3]According to Pannell, a patient has a positive Kemp sign when pain radiates from the lower back to the lower extremity and, although a positive Kemp sign may have different interpretations, it can indicate compression. A Lasègue sign is clinically synonymous to straight leg raise testing.

1.04A's requirement that there be a disorder of the spine and the requirement that there be compression of the spinal cord. Pannell also points to cervical spine X-rays, taken in May 2006, that reveal a loss of lordosis and side bending to the left. The report notes mild degenerative changes anterior to the disc of C5-6. Finally, Pannell relies on the 2008 examination by M.A. Zeb, M.D. ("Dr. Zeb"), in which Dr. Zeb noted that Pannell has decreased grip strength in his upper extremities, with 4+ on the right arm and 3+ on the left arm. Dr. Zeb also noted that Pannell was experiencing numbness in the fingers of his left hand. Pannell argues that this evidence indicates that he has a cervical disorder of the spine that results in a limitation of motion, motor loss (as shown by muscle weakness), and sensory loss. He posits that spinal cord impingement is evidenced by cervical MRI results that reveal a herniated nucleus pulposus that indents the cord at that level.

3

In *Audler* the claimant argued that her disability met the criteria set forth in Listing 1.04A, and she submitted a diagnostic checklist from her treating physician that indicated that she exhibited most of the symptoms of nerve root compression and that she had a positive straight-leg raising test. *Audler*, 501 F.3d at 449. The panel noted that "[n]o medical evidence was introduced to contradict these findings," and it concluded that "[a]bsent some explanation from the ALJ to the contrary, [the claimant] would appear to have met her burden of demonstrating that she meets the Listing requirements for § 1.04A, and therefore her substantial rights were affected by the ALJ's failure to set out the bases for her decision at step three." *Id.*; *see also*, *e.g.*, *Hermosillo v. Astrue*, 2011 WL 4528206, at

*5 (N.D. Tex. Sept. 12, 2011) (Koenig, J.) (listing record evidence supporting claimant's argument that he suffered from moderately severe to severe spinal stenosis with symptoms of nerve root compression, as detailed in Listing 1.04A, and noting that because "[n]o medical evidence contradicted these findings, and absent an explanation from the ALJ, it appears that [the claimant] met his burden of showing that he meets the requirements of § 1.04(A)"), *rec. adopted*, 2011 WL 4528374 (N.D. Tex. Sept. 30, 2011) (Cummings, J.) (order).

This case is unlike *Audler*, however, because although some of the medical records contain evidence that Pannell's impairments meet Listing 1.04A, there is also contrary evidence. For example, although Dr. Farooq noted that Pannell's X-rays showed "very early" degenerative disc disease at the L3-L5 levels, his examination revealed that Pannell had 5/5 motor strength, no tenderness of the back, no limitation of motion of the spine, and no gait abnormality. Additionally, Pannell's straight leg raises were negative. When Charles F. King, M.D. completed a Food Stamp Questionnaire in October 2003, he noted that Pannell was able to work a 40-hour week without restrictions. Further, although the cervical MRI scan in 2005 showed disc degenerative changes at C3-4 with evidence of herniation of the nucleus pulposis, the report noted that "[t]he exiting nerve roots appear to be normal." R. 502. In addition, the X-rays that Dr. Zeb ordered in 2008 showed a "normal lumbar spine," *id.* at 532, and a May 16, 2009 back examination was normal and Pannell's extremities showed normal range of motion with no tenderness. Finally, Jagdish A. Shah, M.D. ("Dr. Shah") examined Pannell in July 2009 and noted that, although Pannell had a history of fall

and injury to the back and had been having problems, there was "no evidence of neuropathy, radiculopathy, or myopathy." *Id.* at 351.

This evidence, which the ALJ cited in determining Pannell's severe impairments, supports a different conclusion from the one on which Pannell relies in contending that his impairments meet or exceed the requirements of Listing 1.04A. There is substantial evidence to support the ALJ's implied finding that Pannell did not meet the requirements for Listing 1.04A. Accordingly, the ALJ's error in failing to state reasons for the implied adverse determination at step three is harmless and does not require reversal. *See Audler*, 501 F.3d at 448-49; *Dunn-Johnson v. Comm'r of Soc. Sec. Admin.*, 2012 WL 987534, at *8 (N.D. Tex. Mar. 22, 2012) (Stickney, J.) ("Substantial evidence discussed by the ALJ supports his decision that Plaintiff's impairment did not meet or equal any listing. The Court finds that the ALJ's failure to meet the *Audler* requirements at Step Three was harmless error, and reversal and remand based upon this legal error is not required.").[4]

---

[4]Pannell argues in the alternative that, should the court find that his lumbar or cervical impairments do not alone meet or equal the requirements of Listing 1.04A, "Plaintiff contends that the impairments in combination with each other, as well as in combination with Plaintiff's acknowledged severe obesity, and repeated diagnosis of diabetic peripheral neuropathy, equal the requirements of the listing." P. Br. 11. Pannell fails to explain, however, how the combination of his impairments would equal the requirements of Listing 1.04A or why, given the court's conclusion that there is substantial evidence to support a finding that Pannell's impairments do not meet the requirements of Listing 1.04A, a consideration of his impairments in combination with each other and in combination with his other impairments would alter this conclusion.

IV

Pannell also contends that the ALJ's decision must be reversed because he applied the wrong severity standard and failed to recognize all of Pannell's severe impairments.

A

"[A]n impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985) (internal quotation marks and citation omitted). The *Stone* panel held that it would assume that the wrong standard had been applied "unless the correct standard is set forth by reference to this opinion or another of the same effect, or by an express statement that the construction [this court] give[s] to 20 C.F.R. § 404.1520(c) (1984) is used." *Id.* at 1106. The Commissioner concedes the ALJ did not cite *Stone* or the severity standard set out in *Stone*.[5] But he argues that reversal is not required under the law of this circuit.

In *Stone* the panel stated that, "[u]nless the correct standard is used [in determining the severity of an impairment], the claim must be remanded to the [Commissioner] for reconsideration." *Id.* at 1106. After *Stone*, however, several Fifth Circuit panels have held

---

[5]The ALJ did not cite to *Stone* in his opinion, and, in explaining the severity standard, he stated that "[a]n impairment or combination of impairments is 'not severe' when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work." R. 11.

that reversal is not required based on a *Stone* error if the ALJ does not terminate the case at step two of the sequential analysis.[6] *See Jones v. Astrue*, 821 F.Supp.2d 842, 849-50 (N.D. Tex. 2011) (Toliver, J.) (collecting cases); *see also Ledezma v. Apfel*, 1998 WL 723847, at *1 (5th Cir. Oct. 5, 1998) (per curiam) (unpublished opinion) ("We have held that when an ALJ proceeds past step two of this process, a court may infer a finding of a severe impairment, and specific reference to *Stone* by the ALJ is not required."). "Further, if the ALJ proceeds past step two of the sequential evaluation process, it is *presumed* that the ALJ found that a severe impairment existed unless the ALJ states otherwise." *Jones*, 821 F.Supp.2d at 850 (emphasis in original) (citing cases); *see also Reyes v. Sullivan*, 915 F.2d 151, 154 (5th Cir. 1990) (per curiam) ("Because the ALJ proceeded to the third step in evaluating Reyes' claim, we must infer that the ALJ found a severe impairment."); *Mays v. Brown*, 837 F.2d 1362, 1364 (5th Cir. 1988) (per curiam) ("[I]f the ALJ proceeds past the impairment step in the sequential evaluation process the court must infer that a severe impairment was found. In this case, the ALJ reached the fifth step in the process. As a result, we conclude that the ALJ implicitly found a severe impairment[.]").

---

[6]Indeed, *Stone*, itself, provides that, "[i]n view of both the [Commissioner's] position in this case and our recent experience with cases where the *disposition has been on the basis of nonseverity*, we will in the future assume that the ALJ and Appeals Council have applied an incorrect standard to the severity requirement," thereby mandating reversal. *Stone*, 752 F.2d at 1106 (emphasis added).

B

The Commissioner argues that reversal is not required because the ALJ explicitly found some impairments to be "severe" and addressed Pannell's other impairments in formulating Pannell's RFC.

To the extent the ALJ found that Pannell's diabetes mellitus, essential hypertension, hepatitis C, and obesity were severe impairments, his failure to cite *Stone* or to apply the *Stone* standard does not require reversal. *See Ledezma*, 1998 WL 723847, at *1; *Jones*, 821 F.Supp.2d at 849-50. Regarding Pannell's other impairments, including his musculoskeletal disorders and allegations of dizziness, fatigue, nausea, and blurred vision, the ALJ did not explicitly find that these impairments were "not severe." And because the ALJ discussed these symptoms in formulating Pannell's RFC, the court must infer that the ALJ found them to be severe. *See Reyes*, 915 F.2d at 154; *Mays*, 837 F.2d at 1364; *Jones*, 821 F.Supp.2d at 850.

In determining Pannell's RFC, the ALJ noted that he "ha[d] considered *all* symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." R. 18 (emphasis added). The ALJ also acknowledged that Pannell suffers from "low back pain with numbness for which he is taking over-the-counter medications." *Id.* at 19. The ALJ explicitly "lowered the lifting and carrying to 20 pounds occasionally and 10 pounds frequently to allow for [Pannell's] allegations of back pain." *Id.* at 20. The ALJ also specifically noted the various symptoms of Pannell's diabetes, including that he experiences fatigue, elevated blood pressure, pain in

his legs and feet, numbness in his toes, numbness in his back, difficulty lifting a gallon of milk, and blurred vision.

The ALJ's consideration in formulating Pannell's RFC of all symptoms of Pannell's various impairments, including those associated with his spine disorder and diabetes, supports the conclusion that the ALJ did not find at step two that these impairments were "not severe." Accordingly, the ALJ's failure at that step to cite *Stone* or the correct severity standard set out in *Stone* does not require reversal.

V

Pannell contends that the ALJ's RFC finding is not supported by substantial evidence. He argues that his ability to perform light work is limited by the need for a sit/stand option, the inability to perform the walking, standing, lifting, or carrying requirements of light work, as well as by frequent dizziness, fatigue, and blurred vision. He posits that the ALJ's RFC finding is inconsistent and ambiguous because, although the ALJ acknowledges that Pannell's ability to perform light work "has been impeded by additional limitations," *id*. at 21, he fails to identify what these additional limitations are.

The court holds that the ALJ's RFC determination is supported by substantial evidence. The ALJ concluded at step four that

> [Pannell] has the [RFC] to lift, carry, push and pull 20 pounds occasionally and 10 pounds frequently as well as stand and/or walk 6 hours and sit 6 hours each out of an 8-hour workday. He remains capable of performing light work as defined in 20 CFR 416.967(b).

*Id*. at 18. The ALJ in part based this decision on his conclusion that Pannell's statements

concerning the intensity, persistence, and limiting effects of his symptoms are not entirely credible.  For example, the ALJ noted that, although Pannell referred to lower back pain, his back pain was not severe enough to prevent him from working in prison.  Additionally, the ALJ relied on the examination by Dr. Shah, who concluded that Pannell could sit 5 hours out of an 8-hour workday, stand 5 hours out of an 8-hour workday, and walk 4 hours out of an 8-hour workday.  The ALJ concluded, however, that Pannell's allegations of needing to move from chair to chair every day because of pain while watching television and sleeping only one to two hours each night "is simply not credible when one considers the objective findings and opinions of the consultative examiner, Dr. Shah and the claimant's lack of complaints or limitations while incarcerated."  *Id*. at 20.  Based on the medical and other evidence, the court concludes that the ALJ's RFC determination is supported by substantial evidence.

To the extent Pannell challenges the "ambiguity" in the ALJ's statement that Pannell's ability to perform light work has been impeded by additional limitations, the court disagrees that this statement is ambiguous.  In full, the ALJ's conclusion on this issue states:

> If [Pannell] had the [RFC] to perform the full range of light work, a finding of "not disabled" would be directed by Medical-Vocational Rule 202.13.  However, [his] ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations.

*Id*. at 21.  The ALJ then relies on the testimony of the vocational expert ("VE") to conclude that jobs exist in the national economy for an individual with Pannell's age, education, work experience, and RFC.  The court can discern no ambiguity in the ALJ's statement.  The ALJ

- 17 -

acknowledged that Pannell's various impairments limit his ability to perform light work, but he concluded, based on the unchallenged testimony of the VE, that there were jobs in the national economy that Pannell would still be able to perform.

* * *

Accordingly, for the reasons explained, the Commissioner's decision is AFFIRMED.

September 21, 2012.

_____
SIDNEY A. FITZWATER
CHIEF JUDGE